UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REXO IMPORTS LLC,

                       Plaintiff,

                                                                                                               Case # 14-CV-6037-FPG

v.

                                                                                                            DECISION & ORDER

BRIGHTON FORD, INC.;
EXTERME MOTOR SPORTS USED CARS, LLC;
DANGEROUSLY RACING, INC., d/b/a
COMPASS TRANSPORT SOLUTIONS; and
HAULING EXPRESS, INC.,

                       Defendants.
_____

## INTRODUCTION

Plaintiff Rexo Imports LLC ("Rexo" or "Plaintiff") commenced this action on January 24, 2014 against four Defendants, namely, Brighton Ford, Inc. ("Brighton Ford); Extreme Motor Sports Used Cars, LLC ("Extreme"); Dangerously Racing, Inc., d/b/a Compass Transport Solutions ("Compass"); and Hauling Express, Inc. ("Hauling Express"), alleging causes of action for breach of contract and negligence relating to the purchase of a 2013 Ford Mustang Shelby by Plaintiff from Defendant Brighton Ford. Dkt. # 1. The gist of the Complaint alleges that Plaintiff Rexo contracted with Brighton Ford to purchase a 2013 Ford Mustang Shelby, that would ultimately be delivered to a third party purchaser, Exclusive Cars AB ("Exclusive"), in Stockholm, Sweden. However, the Shelby was allegedly lost in transit, and therefore never made it to Exclusive. *Id.*

Defendant Brighton Ford answered the Complaint on May 23, 2014 (Dkt. # 15). Since the other three Defendants had not answered the Complaint, on June 4, 2014, the Plaintiff requested the Clerk of the Court to enter default against Extreme, Compass, and Hauling Express

pursuant to Fed. R. Civ. P. 55 (a). Dkt. # 16. On July 1, 2014, the Clerk of the Court entered default against those three Defendants, Dkt. # 17, and the Plaintiff subsequently moved for default judgment against these Defendants pursuant to Fed. R. Civ. P. 55 (b). Dkt. # 18. All Defendants were given until August 21, 2014 to file any responses regarding the Motion for Default Judgment. Dkt. # 19.

On August 20, 2014, Defendant Extreme filed a response in opposition to the Motion for Default Judgment, wherein they ask this Court to vacate the Clerk's Entry of Default against them. Dkt. # 21. The Plaintiff has not responded to this application, and no other Defendant has responded to the Motion for Default Judgment in any fashion.

## DISCUSSION

### I. Motion to Set Aside Clerk's Entry of Default

Once the Clerk of the Court has entered default against a party, Fed. R. Civ. P. 55 (c) permits district courts to "set aside an entry of default for good cause shown." This standard is more lenient than the standard to set aside a default judgment entered by the Court under Rule 60(b). *See Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b).").

In determining whether "good cause" exists to vacate the entry of default, courts consider (1) the willfulness of the default; (2) the existence of a meritorious defense; and (3) the level of prejudice that the non-defaulting party may suffer should relief be granted. *Pecarsky v. Galaxiworld.com Ltd.,* 249 F.3d 167, 171 (2d Cir. 2001) (citation omitted). In addition, "other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1993). In

2

resolving any ambiguities, "all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005).

With these factors in mind, I easily conclude that the Clerk's Entry of Default against Extreme should be vacated. The unopposed submission from this Defendant explains that their default was not willful in that they had contacted their insurance carrier, and were waiting for a determination regarding their coverage. After that coverage decision was made, Extreme obtained counsel and filed the instant application. While the better practice would have been for Extreme to have requested an extension of time from this Court to respond to the Complaint, that misstep is not so severe as to prevent Extreme from defending against the claims in this case. Further, the application recites several potential meritorious defenses, including the averment that Extreme was not involved in making the transportation arrangements that allegedly resulted in the 2013 Shelby being lost. Finally, there is no prejudice in allowing Extreme to now interpose an answer in this case. The Plaintiff, in not responding to the application, has not demonstrated any potential prejudice, and in any event, I discern none. This case is relatively new, and as Extreme points out, discovery has not yet commenced. For all of these reasons, and especially in light of the strong preference for resolving cases on the merits, Extreme's application is GRANTED, and the Clerk's Entry of Default against Extreme is hereby VACATED[1]. Extreme shall answer or otherwise move against the Complaint within 14 days of the entry of this Order.

---

[1] Having vacated the Clerk's Entry of Default against Extreme, the application for a default judgment against Extreme must also be denied.

II.    <u>Motion for Default Judgment</u>

Judgment by default is governed by Rule 55 of the Federal Rules of Civil Procedure, which sets forth a two-part procedure. First, the party seeking default must obtain an entry of default from the Clerk of the Court, by demonstrating that the opposing party has defaulted. Fed. R. Civ. P. 55(a). The entry of default by the Clerk is a mandatory pre-condition to seeking default judgment from the Court. *See, e.g., Perkins v. Napoli*, No. 08–CV–6248 CJS, 2010 WL 455475 at * 1 (W.D.N.Y. Feb. 4, 2010).

After the Clerk has entered default, a moving party may seek a default judgment from the Court. Fed. R. Civ. P. 55(b). However, district courts do not simply accept at face value that a plaintiff is entitled to the particular relief it seeks. Rather, "judgment against a defaulting party should be granted only after careful examination of the moving party's claim by the district court ... Indeed, a defendant's default does not in itself warrant a court in entering a default judgment because there must be a sufficient basis in the pleadings for the judgment entered." *Bianco v. Seaway Industrial Services, Inc.*, No. 03-CV-0084E(F), 2004 WL 912916, at *1 (W.D.N.Y. Apr. 1, 2004) (Elfvin, J.) (internal citations and quotations omitted); *see also Enron Oil Corp.*, 10 F.3d at 95–96. The Second Circuit has also cautioned district courts that "defaults are generally disfavored and are reserved for rare occasions," and when there is doubt as to the propriety of granting judgment by default, "the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

In this case, I have doubts regarding the claims made by the Plaintiff against, and the amounts sought from, Defendants Compass and Hauling Express.

The Motion for Default Judgment asks this Court to "assess total damages in the amount of $94,350.00, plus costs." Dkt. # 18. However, this amount is unsupported by the allegations of the Complaint. First, the Complaint alleges that the Plaintiff paid a $5,000.00 deposit to

4

Brighton Ford for the purchase of the 2013 Shelby (Dkt. # 1, ¶ 9), but is silent regarding any other payments. While the Complaint alleges a purchase price of $72,350.00 plus shipping costs for the Shelby, there is no indication that any funds (other than the $5,000.00 deposit) ever changed hands. *Id.* The Complaint further alleges that Extreme, the Stockholm, Sweden company that purchased the 2013 Shelby, later "canceled its order" (presumably of the Shelby), and then sent $22,000.00 to the Plaintiff in order to purchase two other vehicles (a 2013 Toyota Sienna and a 2013 Ford Edge Limited), although that transaction never occurred. Notably absent from these allegations are any facts to demonstrate any involvement by any of the Defendants in this subsequent transaction. However, the Plaintiff is apparently seeking recovery of this $22,000.00 (which, according to the Complaint, is in the Plaintiff's possession) from all of the named Defendants. On this record, I cannot conclude that the Plaintiff is entitled to recover this sum at all, much less from these Defendants.

In addition, regarding Hauling Express, there is no allegation that a contractual relationship existed between Plaintiff and this Defendant. Instead, the Complaint alleges that "plaintiff entered into a contract with defendant Extreme" for the purchase and delivery of the 2013 Shelby, Dkt. # 1, ¶ 9, and that "plaintiff entered into an additional contract with defendant Compass," Dkt. # 1, ¶ 11, although the Complaint does not describe the nature of that contract. The Complaint further alleges that "[u]pon information and belief, defendant Compass engaged the services of defendant Hauling Express to pick up the Shelby from Defendant Brighton Ford's location and deliver it for shipment." Dkt. # 1, ¶ 13. Hauling Express is then alleged to have "picked up the Shelby from the custody of Brighton Ford without obtaining any verification of Hauling Express's intentions with respect to the delivery of the Shelby" and "instead of delivering it to the Port of Baltimore… delivered the Shelby to an auction located in the State of Illinois, from which it subsequently disappeared." Dkt. # 1, ¶¶ 14, 15.

It is well settled in New York that privity is essential to a contract claim. *LaBarte v. Seneca Resources Corp.*, 728 N.Y.S.2d 618, 620 (4th Dept. 2001) ("Plaintiffs may not maintain a cause of action for breach of contract against those parties with whom they were not in privity."); *Logan–Baldwin v. L.S.M. General Contractors, Inc.*, 914 N.Y.S.2d 617, 619 (N.Y. Sup. Ct., Monroe County 2011) (Fisher, J.) (citation omitted). Generally, "a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Crabtree v. Tristar Automotive Group, Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991). In this case, there is no allegation in the Complaint to even suggest that privity of contract exists between the Plaintiff and Defendant Hauling Express, and without such an allegation, there is no basis to impose liability against Hauling Express.

Regarding Defendant Compass, the Complaint also omits crucial allegations that prevent this Court from imposing liability by default. Although the Complaint alleges that "plaintiff entered into an additional contract with defendant Compass," Dkt. # 1, ¶ 11, the Complaint is silent regarding any details of that contract. While that contract may involve the transportation of the 2013 Shelby, the Complaint makes no such allegation, and as the Second Circuit has instructed, any doubts regarding the propriety of entering a default judgment "should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

For all of these reasons, the Plaintiff's Motion for Default Judgment as against Defendants Compass and Hauling Express (Dkt. # 18), is in all respects DENIED.

## CONCLUSION

For all of the foregoing reasons, the Clerk's Entry of Default (Dkt. # 17) as against Defendant Extreme Motor Sports Used Cars, LLC is hereby VACATED, and Extreme shall answer or otherwise move against the Complaint within 14 days of the entry of this Order. Further, the Plaintiff's Motion for Default Judgment (Dkt. # 18) against Defendants Extreme

Motor Sports Used Cars, LLC; Dangerously Racing, Inc., d/b/a Compass Transport Solutions; and Hauling Express, Inc., is in all respects DENIED.

IT IS SO ORDERED.

Dated: February 4, 2015
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge